GALENA AND SOUTHERN WISCONSIN RAILROAD Co., for use, etc.

*v.*

FREDERICK STAHL.

*Filed at Ottawa May 12, 1882.*

1.  GARNISHMENT—*debtor's obligations given in pledge, and afterwards surrendered to him.* Railroad bonds of a railway company, not sold and negotiated, but merely pledged by it as collateral security, when discharged and surrendered are not property of the company liable to be reached by garnishment against an officer of the company receipting for the same, but who in fact never received them.

2. Same—*whether property interest passed on sale under foreclosure, as to bonds given in pledge.* Where a railway company pledged twenty-eight of its bonds as collateral security for a bank debt, which were included in a subsequent foreclosure decree in a suit for and in behalf of all the bondholders, and a committee of certain holders of the bonds purchased the property, for the costs of the suit, for the benefit of the bondholders contributing towards the payment of the costs, not including the company to whom the twenty-eight bonds had been surrendered by the bank, and upon which bonds no assessment was paid, and a new company was formed by the persons interested in the purchase: *Held,* that the original company took no interest in the purchase as a holder of its own bonds so taken up, and had no property in the purchase liable to be reached by garnishment.

3. Decree—*construed—as to whether for payment of certain pledged bonds.* A decree for the foreclosure of a railroad mortgage securing bonds of the company, found the sum due on twenty-eight bonds pledged by the company as collateral security for a debt of the company, which debt was also secured by a deed of trust, and ordered sale of the property, subject to the trust deed, for the whole sum found due on all the bonds, and that the bonds so pledged, or the judgment thereon in the foreclosure suit, and the personal property pledged, should be surrendered: *Held,* that the latter part of the decree neutralized the portion of it for the payment of the twenty-eight bonds, and, taken together, was no decree for their payment.

4. Appeal—*from Appellate Court—reviewing facts—presumption as to finding by that court.* On affirmance of a judgment or decree by the Appellate Court, in the absence of anything in the record showing what was the finding of fact, it will be taken to have been in the way most favorable for the support of the decision made, and this court will not review the facts.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Jo Daviess county; the Hon. William Brown, Judge, presiding.

This was a proceeding by garnishment, under the statute, against Frederick Stahl, president of the Galena and Southern Wisconsin Railroad Company, as garnishee, to subject a supposed interest held by the railroad company, acquired under the foreclosure sale of the company's mortgaged property, to the payment of a judgment of Madison Y. Johnson against the company. On a hearing had before it, the circuit court discharged the garnishee, which judgment was affirmed

on appeal to the Appellate Court for the Second District, and an appeal taken to this court.

The supposed interest sought to be reached is claimed to arise in respect to twenty-eight bonds of the company, which had been deposited with the National Bank of Galena as collateral security for certain indebtedness of the company to the bank.   In 1872 the railroad company executed its mortgage upon its property and franchise to secure the payment of four hundred of its own bonds, of $1000 each, with interest. Twenty-eight of these bonds were deposited by the company at different times with the National Bank of Galena, to secure three notes given to the bank for the debt of the company. The first note was for $2276.65, dated April 29, 1875, and was signed individually by four persons, then directors of the company, for the collateral security of which the company deposited ten of the twenty-eight bonds.   The next note was for $4671.20, dated June 30, 1877, and signed individually by the directors of the company.   For the collateral security of this note the company deposited eleven of said twenty-eight bonds.   The last note was for $2127.80, dated June 30, 1877, and signed by the company only, for the collateral security of which the company deposited the remaining seven of the twenty-eight bonds.

In September, 1878, the railroad company executed to William W. Wagdin a deed of trust upon all of its property and franchises, to secure the payment of the three notes referred to, the bank continuing to retain the twenty-eight bonds as collateral security for the debt.   At the February term, 1879, of the circuit court of Jo Daviess county, a decree of foreclosure of the original mortgage was entered of record, and an absolute sale, subject to the Wagdin deed of trust, was ordered of all the mortgaged property, to pay the mortgage bonds and interest.   The bank proved up the twenty-eight bonds before the master, and in the decree a judgment was rendered on them, for "the use of the bank."   On May 3,

1879, a sale took place, under the decree, to a committee appointed to make the purchase by and for the bondholders, or a portion of them, who had entered into an agreement to form a new company, and assessed on each bond the sum of five dollars, to pay the costs and expenses of the foreclosure. The mortgaged property was bid in by this committee for $2000. The purchasers formed a new railroad company, subscribing in it as stock the amount due them from the old company, at fifty cents on the dollar. This new company elected officers, and operated the road up to April, 1880. In April, 1880, the Chicago and Northwestern Railroad Company purchased the stock of this new organization, and thus became the owner of the property. On the 26th of the same month it paid the bank debt secured by the Wagdin deed of trust, and on the same day the garnishee, Stahl, as president of the Galena and Southern Wisconsin Railroad Company, gave to the bank his receipt, stating that the twenty-eight bonds deposited with the bank, as collateral security for such debt, had on that day all been returned back to that company. The garnishee answered that the company was entirely insolvent, and without any property since the foreclosure sale, and that at and since the service of process on him he had no property of the company in his possession, power or control. Issue was taken upon the truthfulness of the answer, and the foregoing facts were relied upon as sustaining the issue against the garnishee.

Mr. M. Y. Johnson, for the appellant.

Messrs. D. & J. J. Sheean, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

As in the decree of foreclosure judgment was rendered on these twenty-eight bonds for the sum of $36,360, the amount due upon them, and that constituted a part of the whole amount of the decree upon which the mortgaged property

was sold, it is contended by appellant that by the return by the bank to the company of these twenty-eight bonds there reverted back to the company so much of the property sold to satisfy the decree as was represented by $36,360 of the decree. This would be treating these twenty-eight bonds as if they were the bonds of some other party than the company,—as if they had, in fact, been actually returned to the company, and as if the sale had been for the full amount of the decree. But these twenty-eight bonds had never been sold and negotiated by the company,—they were merely pledged by the company as collateral security for the payment of the company's three notes. Both were but the promises of the company,—the notes the original promises, and the bonds the collateral promises,—and upon the payment of the notes, the original promises, the bonds, the collateral promises, were discharged, and the return of the latter to the company would vest in the company no property in the bonds, their own promises. There were, in fact, no bonds returned by the bank to the company. Upon the payment of the bank debt, the bank, for its protection, to show that it had accounted for the bonds to the railroad company depositing them as collateral security, required from the president of the company a receipt for the bonds as returned back by the bank to the railroad company. It was but a formality. There were no bonds returned. They were remaining in the hands of the master, where they had been left by the bank on proving them up before him, when the decree was taken for the amount of the bonds, for "the use of the bank," and they were merged in that decree.

The sale was not for the amount of the mortgage indebtedness for which the decree was entered. The property sold but for $2000,—the amount only, as the garnishee answers, of the costs and expenses of the foreclosure, which sum was contributed and paid from the assessment of five dollars upon each bond, so that there was really no part of the decree for

the mortgage indebtedness satisfied by the sale of the mortgaged property. Besides, the decree, at its close, recited that these twenty-eight bonds, with other personal property, had been pledged for the payment of the indebtedness secured to be paid by the deed of trust to William W. Wagdin,—that indebtedness, as before observed, being the bank debt,—and then says: "All which bonds and personal property remain pledged for the indebtedness in said deed of trust to William W. Wagdin, the bonds or the judgment upon them in this suit, and said personal property, to be surrendered." As the property was to be sold subject to this Wagdin deed of trust, it was a very proper provision that these twenty-eight bonds, or the judgment upon them, which were held but as collateral security for the indebtedness in the trust deed mentioned, should be surrendered. This provision in the decree neutralized the portion of it for the payment of these twenty-eight bonds, and taking the whole decree together, there was in reality no decree for the payment of those bonds, this final provision rendering the decree as if there had been no order in it for such payment.

But it is contended further, that the property was purchased at the foreclosure sale for, and on behalf of, all the bondholders, and that if the twenty-eight bonds, or the judgment upon them, can not be followed and availed of as the property of the company, yet the company has an interest in the property bought at the foreclosure sale, as purchaser, as being one of the bondholders for and on whose behalf the property was purchased. It is true that on the proceeding for the confirmation of the report of the foreclosure sale, it appears there was introduced in evidence the affidavit of the three committeemen who were appointed to bid in the property, which stated "that the committee was appointed to buy the mortgaged property at the sale, in trust for the bondholders, with power to bid it in, to the extent of the indebtedness as found by the decree, if necessary, and expressly providing

that any purchase made by them should be in trust for the bondholders; that so far from any one expecting to get a valuable property for nothing, the property was bought for the benefit of all the bondholders, and is so held by the committee," and the report of the sale was thereupon confirmed by the court. The garnishee in his answer states that the purchase was made by the committee appointed by a part of the persons interested in the bonds; that the purchase was not made for all the bondholders, but only for such as subscribed a paper agreeing the purchase should be made by said committee, and that the interest of each purchaser should be in proportion to the bonds held by him; that these twenty-eight bonds were not represented in the purchase. This paper writing was not in evidence. One of the committee named testified on the hearing in this garnishment proceeding, that he was one of the committee to bid in the railroad for the new organization; that the committee turned the whole railroad and its property over to the new company when it was organized; that the purchase was for all that came in; that all the bondholders could come in; that these twenty-eight bonds did not come in, and some others, when they turned the property over to the new organization. It appears that nothing was done on behalf of these twenty-eight bonds, either in paying the assessment of five dollars on each bond to pay costs and expenses of foreclosure, or in coming in to the new company and taking stock therein for the amount found due upon the bonds, at one-half such amount,—the mode of formation of the new company.

If we take the *ex parte* affidavits introduced on the confirmation of the foreclosure sale as proper evidence in this case, we then have a conflict of evidence whether the purchase at that sale was for and on behalf of all the bondholders, or of only certain of the bondholders, not including the holders of these twenty-eight bonds. As on appeal from the Appellate Court we do not review any determination of con-

troverted facts, but only questions of law, in the absence of anything in the record showing what was the finding of fact, we must take it to have been in the way most favorable for the support of the decision made; and in the present case, that the property was not purchased at the foreclosure sale for and on behalf of all the bondholders, but for and on behalf of a portion of them only, of which the holders of these twenty-eight bonds, or the Galena and Southern Wisconsin Railroad Company, did not form a part.

Not perceiving from the record that at the time of the service of process on the garnishee, or since, he was indebted to such railroad company, or had any effects or estate of the company in his possession, custody or charge, or that the company itself had any property whatever, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*